SOUTHWICK, P.J.,
for the Court:
¶ 1. A child’s mother initiated an action for custody of her minor son. The father’s opposing claim for custody was granted by the chancellor. The mother appeals arguing that a North Carolina court had already awarded custody to her and that grounds for modification were not shown. We find that the North Carolina court made no rulings regarding custody. We affirm.
*736 STATEMENT OF FACTS
¶ 2. Annie Mae Twitty and Delewis Twitty were married in 1993. The couple settled in Rutherford County, North Carolina. One child, Jalón S. Twitty was born to them in 1994, while they still resided in North Carolina.
¶ 3. The couple separated on July 6, 1994. Mrs. Twitty moved to Holmes County, Mississippi, where she presently resides. Mr. Twitty lives in North Carolina. On May 2, 1996, the General Court of Justice District Court Division, Rutherford County, North Carolina, granted the parties a divorce. The court’s order stated as one of its “findings of fact” that “all outstanding issues of property, alimony, equitable distribution, child custody, child support and visitation have been resolved by mutual agreement between the parties.” Nothing provided to us reveals a court record of what these mutual agreements might have been. The parties appear to accept that the 1996 understanding was that the child’s mother would have custody but no written 1996 agreement appears.
¶ 4. Mr. Twitty claims that in March of 1997 he attempted to contact his former wife to arrange a visit with his son. He was allegedly informed by her aunt who lived in Holmes County that his son was with the aunt, but that she did not know Mrs. Twitty’s location. Mr. Twitty then filed a petition for a writ of habeas corpus in the Chancery Court of Holmes County, requesting that the aunt bring the child to court for a hearing. The aunt appeared at the hearing and testified that the child was no longer in her possession and that he was in Iowa with his mother.
¶ 5. After an attempt to locate the child and mother in Iowa failed, the father filed a petition for custody in the North Carolina court that had granted the divorce. In September 1997 custody was awarded to Mr. Twitty. Once he learned that his son and former wife were again residing in Mississippi, Mr. Twntty, with the help of local police, enforced the custody order by removing the boy from a daycare provider. The father and son returned to North Carolina.
¶ 6. That was a temporary victory. Mrs. Twitty filed a motion before the North Carolina court alleging that the custody order should be set aside. She claimed that she had never been served with process. After a hearing the court determined that the mother’s alleged signature on the service of process was not genuine and vacated the custody order.
¶ 7. Our proceedings commenced in February 1998 when Mrs. Twitty filed with the Holmes County Chancery Court for custody of her son. The boy’s father filed an answer and a counter-claim for custody. The chancellor and the North Carolina judge who signed the divorce order conferred by telephone and determined that Holmes County was the proper forum for the suit.
¶ 8. The chancellor’s next determination was that there had been no prior custody ruling by the North Carolina court. A de novo determination of custody was undertaken. Applying the factors relevant for custody decisions, the chancellor found that it would be in the best interest of the child for his father to have custody. From that decision this appeal was taken.
DISCUSSION

Legal Standard Applicable to the Issue of Custody

¶ 9. The chancery court applied the factors identified by the Mississippi Supreme Court for making original determinations about custody. Albright v. Albright, 437 So.2d 1003 (Miss.1983). No complaint about the application of those factors is made here other than the threshold one that they were irrelevant. Mrs. Twitty alleges that the issue of custody was already decided by the North Carolina court. Under this view, the chancellor should have determined whether grounds justifying a modification had been shown, *737 which requires proof of a material change in circumstances adverse to the interests of the child. Smith v. Jones, 654 So.2d 480, 486 (Miss.1995).
¶ 10. The simply stated if not so easily answered question, then, is whether the North Carolina court made a determination about child custody. Under the Uniform Child Custody Jurisdiction Act, Mississippi courts are required to extend fall faith and credit to foreign custody decrees if the foreign court had assumed jurisdiction under statutory provisions substantially in accordance with our own. Miss.Code Ann. § 93-23-25 (Rev.1994).
¶ 11. In order for a Mississippi court to extend full faith and credit there must be a final judgment, decree or decision of a foreign court to be recognized. Mrs. Twitty argues that the North Carolina court made a final determination as to the custody of the child. That court as a finding of fact stated that “all outstanding issues of property, alimony, equitable distribution, child custody, child support, and visitation have been resolved by mutual agreement between the parties.” There was nothing in the order revealing what those mutual agreements might have been, nor do we interpret the language as an incorporation and adoption by reference. Our statute defines a “custody determination” as “a court decision and court orders and instructions providing for the custody of a child, including visitation rights.... ” Miss.Code Ann. § 93-23-3(c) (Rev.1994) The North Carolina decree did not provide for the custody of the child, but only referred to the parties having agreed as to custody.
¶ 12. We find that an unusual approach and have reviewed North Carolina law on whether such decrees are the standard means by which custody decisions are stated. Instead, we find that a North Carolina court is to include provisions about custody in the decree:
Where the court has the requisite jurisdiction and upon proper pleadings and proper and due notice to all interested parties the judgment in a divorce action may contain such provisions respecting care, custody, tuition and maintenance of the minor children of the marriage as the court may adjudge; and from time to time such provisions may be modified upon due notice and hearing and a showing of a substantial change in condition; and if there be no minor children, the judgment may so state....
N.C. Gen. State. Ann. § 50-11.2 (1999). We do not interpret this as providing just one of multiple options for making custody decisions. If the judgment is to provide a binding decision about any of the matters stated in the statute including custody, then jurisdiction for that decision must exist and the order is to state the decision. North Carolina’s intermediate appellate court stated that a decree “in a divorce action may contain provisions respecting child custody when that issue has been properly presented to the court.” Carmichael v. Carmichael, 40 N.C.App. 277, 252 S.E.2d 257, 258 (1975). All we can say is that there is no indication that the issue was presented for decision.
¶ 13. As suggested in our discussion of our own statutes, before a Mississippi court must give full faith and credit to another state’s custody decision, there must be a court’s judgment that determines custody. All we have is a North Carolina judgment that makes a finding of fact that the parties have mutually agreed as to custody. No determination is made that the agreement should be accepted, nor is there even a necessary implication in the judgment that the court even knew what the mutual agreement contained. We find no custody judgment at all.
¶ 14. The reason for the approach of the North Carolina order may have been an absence of jurisdiction. As stated in the quoted North Carolina statute, a divorce decree should include pronouncements about custody only when “the court has the requisite jurisdiction and upon proper pleadings and proper and due notice to all *738 interested parties.... ” N.C. Gen.Stat. Ann. § 50-11.2. The requirements for initial custody decisions are those in that state’s version of the Uniform Child Custody Jurisdiction and Enforcement Act.
(a) Except as otherwise provided in G.S. 50A-204, a court of this State has jurisdiction to make an initial child-custody determination only if:
(1) This State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State;
(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under G.S. 50A-207 or G.S. 50A-208, and:
a. The child and the child’s parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and
b. Substantial evidence is available in this State concerning the child’s care, protection, training, and personal relationships;
(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under G.S. 50A-207 or G.S. 50A-208; or
• (4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3)....
N.C. Gen.Stat. Ann. § 50A-201. The stated exception in paragraph (a) is for temporary custody decisions based on an emergency. N.C. Gen.Stat. Ann. § 50A-204.
¶ 15. Even had these rules not been adopted by North Carolina, Mississippi would not recognize a custody decree entered by a court that did not have provisions substantially similar to those just quoted. Mississippi’s version of the UC-CJA are essentially identical to that of North Carolina. They provide that in order for a Mississippi court to assume jurisdiction, (1) Mississippi must be the home state of the child at the time of the custody proceeding or was within six months prior to the custody proceeding; or (2) the child and at least one parent have a significant connection with the state and it would be in the best interest of the child; or (3) the child is physically present in Mississippi due to abandonment or it is necessary due to an emergency to protect the child from abuse; or (4) no other state would have jurisdiction over the matter. Miss.Code. Ann § 93-23-5 (Rev.1994).
¶ 16. Both parties agree that the child moved with his mother away from North Carolina at the time that the parties separated in July 1994, two years before the divorce. We are not deciding here that the North Carolina court could not have exercised jurisdiction over the child, but are only concluding that a North Carolina court might have had some doubt as to the propriety of resolving custody. That may explain why the 1996 judgment does not appear to do so. This adds support to our conclusion that the North Carolina court made no custody determination at all.
¶ 17. Since we find that the chancellor was correct in treating this as an initial custody determination rather than as a modification, there is no need to discuss the argument that insufficient proof was presented for custody modification.
¶ 18. There is no challenge made to the validity of the chancellor’s decision if we conclude that it was correct for the court to consider this an original determination of custody. We have reached that conclusion and therefore affirm.
¶ 19. THE JUDGMENT OF THE HOLMES COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS *739 OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.